SEP 17 2026 PM4:08
FILED - USDC - FLMD - TPA
SEP 17 2026 PM4:09
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# TAMPA DIVISION

ESAM NOUFAL,
Plaintiff,

v.

HD SUPPLY MANAGEMENT, INC.,
Defendant.

CASE NO. 8:26-cv-2727-JLB-AEP

***NOTICE OF RELATED ACTION FILED CONCURRENTLY***
***(Related to Case No. 8:25-cv-02816-JLB-LSG)***

## PLAINTIFF'S INITIAL VERIFIED CIVIL RIGHTS COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Esam Noufal, proceeding pro se, respectfully files this Initial Verified Civil Rights Complaint against Defendant, HD Supply Management, Inc. Plaintiff seeks back pay, front pay, liquidated damages where authorized, compensatory damages, punitive damages, equitable relief concerning his employment records, injunctive relief, and declaratory relief for alleged national-origin discrimination, age discrimination, disability discrimination, and retaliation in violation of



$405
TPA74897

Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and Title I of the Americans with Disabilities Act (ADA).

---

## I. JURISDICTION AND VENUE

1. This Court holds federal question jurisdiction under 28 U.S.C. § 1331, as this action arises directly under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the ADEA (29 U.S.C. § 621 et seq.), and Title I of the Americans with Disabilities Act (42 U.S.C. § 12111 et seq.).

2. Venue is proper in the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1391(b) because the unlawful employment practices, the discriminatory termination, the text message exchanges, and the underlying internal investigations occurred at Defendant's commercial facility located at 6850 Firstpark Blvd, Suite 150, Lakeland, Florida 33805.

3. Plaintiff has exhausted his administrative prerequisites. Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) under Charge No. 511-2026-04340. The EEOC completed its administrative review and issued an official Determination and Notice of Right to Sue on August 31, 2026. This Complaint is filed within the mandatory 90-day statutory window.

## II. PARTIES

4. Plaintiff, Esam Noufal, is an adult resident of Polk County, Florida. Plaintiff is 41 years of age, a person of Middle Eastern national origin, and a practicing Muslim, placing him within the classes protected by Title VII and the ADEA. Plaintiff is an individual with a qualified mental

impairment (Attention-Deficit/Hyperactivity Disorder – ADHD) under the ADA, which substantially limits one or more major life activities.

5. Defendant, HD Supply Management, Inc., is a corporation doing continuous business in the State of Florida, employing more than 15 individuals, and operating an active commercial logistics and warehouse facility in Lakeland, Florida. At all times relevant, Defendant acted as an "employer" under Title VII, the ADEA, and the ADA.

## III. STATEMENT OF FACTUAL ALLEGATIONS

### A. Exceptional Performance History, Safety Record, and Loyalty

6. Plaintiff was employed by Defendant HD Supply Management, Inc. at its Lakeland facility until his termination on his 41st birthday, May 6, 2026.

7. Throughout his career with Defendant, Plaintiff performed his duties reliably and achieved high production metrics. On his official 2025-26 Performance Review, Plaintiff received an overall rating of "Successful" from his direct supervisor, John Laurencin. Manager Laurencin explicitly documented in writing: "Esam is always willing to help and a valued member of our team and safety is one of his top priorities… Esam is big on keeping a clean work area." Plaintiff regularly placed in the Top 3 lines-per-hour (LPH) pickers, frequently ranking #1 in the facility, including on the days of multiple retaliatory incidents.

8. In November 2025, Plaintiff received Defendant's official "Big Deal" corporate recognition for his safety practices and dedication to workplace teamwork. Plaintiff also possessed an official corporate safety card acknowledging his proactive safety management on the warehouse floor.

9. To demonstrate his long-term career dedication and sense of corporate belonging, Plaintiff made an order to purchase official company merchandise ("swag") through Defendant's HR office. HR Manager Lori Downs confirmed the order on April 16, 2026. Due to Defendant's sudden discharge of Plaintiff, Defendant withheld the items and did not deliver the merchandise to Plaintiff.

**B. Documented Protected Activities and Supervisor Harassment**

10. Prior to his termination, Plaintiff engaged in formal protected activities by escalating internal written complaints to Human Resources regarding supervisor John Laurencin's ongoing workplace harassment, policy violations, and retaliatory conduct.

11. Supervisor John Laurencin subjected Plaintiff to an adverse work environment, targeting Plaintiff with remarks regarding his age and career track, telling Plaintiff on multiple occasions: "What are you doing here, find another job."

12. On August 26, 2025, Plaintiff sent a formal written complaint to HR Representative Donnis Johnson ("DJ") detailing an incident where an unauthorized user tampered with Plaintiff's electronic time clock, logging an impossible punch at 2:03 AM—four hours after Plaintiff left the building. Plaintiff alerted HR that management was attempting to place a false timecard violation under his name to build a pretextual disciplinary pattern.

13. On December 3, 2025, Plaintiff filed a multi-page Formal Complaint Regarding Retaliation, Favoritism, Policy Violations, and Hostile Behavior with HR Manager Lori Downs and Donnis Johnson. Plaintiff documented that hours after he stayed late to help the team and raised valid operational concerns about broken packing printers, supervisor John Laurencin

retaliated by issuing a malicious attendance write-up 34 hours after the fact, despite Plaintiff having text him a notice of delay in advance. Plaintiff explicitly possessed available Paid Time Off (PTO) at that time to utilize in the event management refused to excuse the shift.

14. When Plaintiff refused to sign the retaliatory write-up, supervisor John Laurencin and a supervisor named "Sam" cornered and confronted Plaintiff at the office in an intimidating manner. At approximately 10:15 PM that night, supervisor Laurencin interfered with Plaintiff's statutory rights, telling him: "You are not allowed to write this email on the clock," forcing Plaintiff to type his HR complaint at 3:00 AM off the clock while experiencing severe anxiety.

15. On March 4, 2026, Plaintiff submitted another formal written rebuttal to HR after supervisor Laurencin falsely accused him of "hiding" during a brief sweat break. The written record proves that Laurencin explicitly gave Plaintiff permission to take an early lunch break, then used that exact early break to accuse Plaintiff of violating schedule policies—establishing a pattern of administrative entrapment.

16. Before and during these escalations, Plaintiff alerted HR to the manipulative conduct of his unit's team lead, "Guy Austin." Team Lead Austin engaged in an ongoing "tit-for-tat" pattern of behavior with specific female employees and spread malicious gossip about Plaintiff's interactions. Despite Plaintiff's explicit disclosures, Defendant took zero corrective action or discipline against Lead Austin, allowing him to continuously sabotage Plaintiff's work environment.

**C. Inconsistent Enforcement of Corporate Standards and Double Standards**

17. Defendant HD Supply Management, Inc. maintained a practice of concealing supervisor misconduct while punishing employees who complained.

18. In his official March 4, 2026 escalation to HR, Plaintiff documented a profound corporate double-standard: on February 17, 2026, supervisor John Laurencin abandoned his post and was off the warehouse floor for hours, returning at 7:00 PM with his face visibly smeared with lipstick prints. When Plaintiff and a coworker explicitly asked him about the lipstick prints to his face, Laurencin panicked, began rubbing his face frantically, and fled to the restroom to wash his face.

19. Furthermore, when female team members previously filed internal complaints regarding this supervisor engaging in inappropriate activities at the facility, Defendant took no disciplinary action against the supervisor. Instead, management held a meeting, complete with a manager on videocall from California Location who speaks Spanish, where they explicitly ordered the complaining female employees to "Stop the Drama."

20. Defendant's management further obstructed Plaintiff from career advancement. When Plaintiff applied for an internal promotion, Defendant's regional tracking scheduled a formal interview. Corporate Recruiter Ebony text Plaintiff enthusiastically on November 20th: "Tomorrow is the day! You've got this!... bring your good energy and great SMILE!" However, when Plaintiff arrived, the local facility abruptly canceled the interview, claiming an "unexplainable mistake," and permanently blocked Plaintiff from rescheduling. On November

29th, Recruiter Ebony text an official corporate admission of fault: "I apologize on behalf of them that they did not accommodate you… I will reschedule your interview… Allow me to look into this Monday." The local managers ignored corporate recruiting and permanently suppressed the promotion.

**D. The Ramadan Discrimination and Separate Litigation Context**

21. While navigating this environment, Plaintiff disclosed to Defendant's human resources identification system that he suffers from a clinically diagnosed disability, specifically ADHD. Rather than engaging in the mandatory interactive process, management weaponized the disclosure, putting Plaintiff under intense, unexplained corporate pressure to induce panic.

22. During the holy month of Ramadan, Plaintiff requested a schedule change for March under the general description of "personal reasons" without expressly identifying Ramadan. Having previously alleged and experienced what Plaintiff understood to be anti-Muslim profiling and administrative harassment during his prior employment at Amazon, which gave him anxiety, bad experience, and losing the sense of job security if he revealed his religious believes, Plaintiff feared that expressly disclosing his religious observance at HD Supply would expose him to further hostility, that experience at Amazon has traumatized him to disclose his religious background at the workplace.

23. Plaintiff's profound fears were instantly validated. Despite supervisor Laurencin having explicitly approved and announced the schedule change at the SOS team meeting, Laurencin maliciously lied to HR, falsely claiming that the modification was entirely unapproved and that Plaintiff had unilaterally changed his hours. Defendant used this manager's lie to subject

Plaintiff to intense investigation, surveillance, and scrutiny directly tethered to the timeline of his religious observance, laying the structural groundwork for a pretextual termination.

**E. Managerial Coaching and the Pretextual Investigation Sequence**

24. In early spring 2026, Ryan Butler was assigned as Plaintiff's new direct supervisor. Supervisor Butler was actively coached, guided, and instructed by former supervisor John Laurencin to maintain and perpetuate the ongoing retaliatory campaign and heightened administrative surveillance against Plaintiff, as he made many made up confrontations and closed doors questioning in front of him. A mere one month into assuming supervisory authority over Plaintiff, Supervisor Butler executed the next phase of this coordinated retaliation by summoning Plaintiff to a formal internal investigation room to confront him with manufactured complaints.

25. Specifically, on April 24, 2026, Defendant launched a calculated, pretextual investigation against Plaintiff, using manufactured, false allegations of sexual harassment involving two female employees as an escape hatch to execute a firing, which Plaintiff immediately and entirely denied. On April 29, 2026, Plaintiff sent a text to HR Manager Lori Downs completely denying the claims, explicitly stating: "I deny everything… this incident has a perfect 'middle school' immature dynamic that is based on Jealousy & Hatred." Plaintiff pointed directly to Team Lead Guy Austin's malicious instigation. That text was sent after a 33 mins call from Lori with Plaintiff.

26. On Tuesday, May 5, 2026, at 10:23 AM, HR Manager Lori Downs text Plaintiff demanding his text message logs with a female employee. Immediately, Plaintiff complied,

sending physical screenshots containing photographs of traditional Middle Eastern food alongside an invitation written in Spanish: “quiero invitarte a este restaurante de mi cultura, mujer. Este Sabado te parece?” (I want to invite you to a restaurant from my culture on Saturday, what do you think?), with screenshots for that restaurant showing its Middle Eastern food and name. This text message submission provided HR Manager Lori Downs with direct, explicit notice of Plaintiff’s Middle Eastern national origin and cultural identity.

27. The next day, Wednesday, May 6, 2026, Defendant terminated Plaintiff’s employment on his 41st birthday. Plaintiff alleges that the timing intensified the humiliation and emotional distress caused by the termination.

28. To execute this, Defendant committed immediate timecard fraud. On May 5th, the moment Plaintiff revealed his Middle Eastern culture, HR retroactively altered his timecard to log a fraudulent “Unexcused Absence.” Then, on May 6th, while Plaintiff was under suspension, HR manually edited his timecard to log “Vacation” for 19.75 hours without his consent to administratively freeze his profile. Furthermore, on April 24th, Defendant completely withheld payment from Plaintiff for part of his scheduled shift.

29. Throughout this process, Defendant completely concealed the investigation details, refused to provide the text of the claims, and refused to identify the second woman whom they claimed Plaintiff had “inappropriately touched.” Defendant completely withheld his termination paperwork from Plaintiff. Plaintiff only discovered Defendant’s alleged grounds for discharge months later, after the personnel file was produced via a third-party discovery subpoena issued in a separate, active federal legal proceeding titled Noufal v. Amazon.com Services LLC, Case No. 8:25-cv-02816-JLB-LSG.

30. Following his discharge, Plaintiff called the corporate Ethics Line on May 29th for an intensive 32-minute and 43-second appeal. Defendant closed the file, stating that their "findings must remain confidential and cannot be shared." He also reached out to have a resolution from HD Supply and asked to remove that unproven stigma from his employment records, as it was mentioned explicitly in a text sent on the Termination Day "His birthday", on May 6, to the HR Manager, Lori Downs.

## IV. STATEMENT OF CONSEQUENTIAL AND CALCULATED DAMAGES

### A. Complete Sabotage of Family Court and Divorce Proceedings

31. On Monday, May 11, 2026, at 12:32 PM, Plaintiff sent a high-priority text message to HR Representative Donnis Johnson ("DJ") explicitly stating: "Hi DJ, just a kind reminder that I need my last payslip, for May 1st, as I need it today, since I have a family court tomorrow. I can't log into 'my work' from myside." Representative Johnson text back an explicit corporate promise: "Absolutely Esam."

32. Despite this explicit knowledge, Defendant's HR department deliberately suppressed and withheld the payslip documentation, leaving Plaintiff with zero physical proof of his sudden income destruction when he stepped before the Circuit Judge on May 12, 2026.

33. The Circuit Judge entered a formal Order Continuing Final Hearing. This intentional suppression directly forced an almost six-month extension of Plaintiff's divorce litigation, ballooned his family law legal fees, accelerated his entry into a catastrophic mortgage forbearance plan to save his home, accelerated the complete destruction of his previously perfect 100% credit

payment history, and caused severe, permanent emotional distress, mental anguish, and self-esteem destruction.

**B. The Inter-Corporate Track and Document Suppression**

34. Plaintiff is a highly disciplined litigant who has been locked in an active, two-year ongoing federal litigation marathon against Amazon.com Services LLC (Noufal v. Amazon, Case No. 8:25-cv-02816-JLB-LSG).

35. Defendant HD Supply Management, Inc.'s intentional concealment of these unverified records directly impacted Plaintiff's rights and strategy in separate, active federal litigation. Specifically, in Noufal v. Amazon.com Services LLC, Case No. 8:25-cv-02816-JLB-LSG, Defendant Amazon's defense counsel utilized Defendant HD Supply's unproduced, unverified termination records as a primary focal point during Plaintiff's court-ordered oral deposition and subsequent alternative dispute resolution tracks. During the 6.5 hours video-recorded deposition, Amazon's counsel repeatedly referred to an alleged complainant as a "victim." Plaintiff objected to that characterization and stated, "THERE WAS NO VICTIM." Later, counsel asked, "Did the victim sue you because of your sexual harassment?" Plaintiff was confused, surprised, and distressed by the question, particularly because he denied the alleged misconduct and had not been given sufficient information about the identity of the woman he was accused of touching, the alleged encounter, or the supporting evidence. After hesitating, Plaintiff answered, "No." Plaintiff's hesitation reflected his confusion and distress at the question, not an admission that

sexual harassment had occurred. These statements are recounted from Plaintiff's personal recollection of the deposition.

36. Because Defendant HD Supply did not provide these termination records or the substance of the allegations to Plaintiff during his employment or subsequent internal ethics appeal, Plaintiff lacked the documentation necessary to address the allegations before third-party defense counsel used them as an attempt for "Character Assassination" in the separate federal action. Plaintiff alleges that Defendant's withholding of the records materially increased his litigation burdens and caused the previously undisclosed allegations to become relevant in separate federal proceedings.

## COUNT I: NATIONAL ORIGIN DISCRIMINATION

*(Violation of Title VII of the Civil Rights Act of 1964)*

37. Plaintiff re-alleges and incorporates paragraphs 1 through 36 as if fully set forth herein.

38. Plaintiff is a member of a protected class based on his Middle Eastern national origin and Muslim faith.

39. Plaintiff was highly qualified for his position and performing at an exceptional level, as verified by his "Successful" annual review rating, top-3 facility LPH metrics, and the official corporate "Big Deal" accolade.

40. Defendant's HR Manager Lori Downs received information expressly identifying Plaintiff's Middle Eastern culture on May 5, 2026. Defendant terminated Plaintiff the following day, on his 41st birthday. Plaintiff alleges that this close temporal sequence, together with the other pleaded facts, supports an inference of intentional discrimination.

41. Defendant's manufactured sexual harassment termination was a pretext for national origin discrimination, as proven by Defendant's complete concealment of investigation data, refusal to identify the second accuser, and the fraudulent, retroactive pay-code manipulation on his timecard.

## COUNT II: DISABILITY DISCRIMINATION — HOSTILE WORK ENVIRONMENT

*(Violation of Title I of the Americans with Disabilities Act)*

42. Plaintiff re-alleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

43. Plaintiff is a qualified individual with a disability (ADHD) under the ADA.

44. Plaintiff gave Defendant direct notice of his disability.

45. Rather than engaging in the mandatory interactive process, Defendant intentionally subjected Plaintiff to an adverse hostile work environment, using unexplained corporate pressure, shifting schedule denials, and intense scrutiny to exploit his disability and induce psychological panic.

## COUNT III: AGE DISCRIMINATION

*(Violation of the Age Discrimination in Employment Act – ADEA)*

46. Plaintiff re-alleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff is a member of the protected class under the ADEA because he was 40 years old before the termination and turned 41 on the date of termination.

48. Plaintiff's direct supervisor repeatedly targeted Plaintiff with discriminatory verbal hostility and age-based remarks designed to undermine his employment security, stating: "What are you doing here, find another job."

49. Defendant terminated Plaintiff on his 41st birthday. Plaintiff alleges that the timing, considered together with the supervisor's repeated remarks concerning Plaintiff's career track and the other pleaded facts, supports his claim that age was a factor in the adverse action.

## COUNT IV: RETALIATION

*(Violation of Title VII, the ADEA, and the ADA)*

50. Plaintiff re-alleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiff engaged in extensive, documented protected activities by escalating internal written complaints in August 2025, December 2025, March 2026, and April 2026 regarding supervisor retaliation, misconduct, clock-tampering, and Team Lead Guy Austin's manipulative misconduct.

52. Defendant maintained a systemic pattern of protecting harassing managers—such as handling supervisor sexual activity by telling employees to "Stop the Drama"—while aggressively targeting complaining workers.

53. Plaintiff alleges that Defendant retaliated against him by initiating a pretextual investigation through newly assigned Supervisor Ryan Butler, canceling his corporate-authorized promotional interview, altering timecard entries, terminating him on his 41st birthday, withholding requested payroll documentation before his family-court hearing, and concealing unproven

termination papers and provide them via subpoena for a separate litigation "Noufal V. Amazon" which they were used negatively against the Plaintiff.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant HD Supply Management, Inc., granting the following relief:

1. A formal declaration that Defendant's employment practices violated Title VII, the ADEA, and the ADA;

2. An award of back pay, front pay, liquidated damages under the ADEA, and lost benefits, calculated to remedy the severe financial crisis and underemployment directly caused by the termination;

3. An award of compensatory damages for severe emotional distress, mental anguish, reputation harm, self-esteem damage, destruction of credit & mortgage payment history, and the forced 6-month continuance of his divorce proceeding caused by Defendant hiding termination documents;

4. An award of punitive damages to punish Defendant for its malicious concealment of evidence, its "Stop the Drama" policy, its intentional document suppression, its retaliation and discrimination;

5. An award of all incurred legal fees, any future attorney fees incurred during this litigation, and all taxable court costs;

6. A permanent mandatory injunction ordering Defendant HD Supply Management, Inc. to completely clear, purge, and expunge any and all references to the manufactured, fraudulent sexual

harassment allegations from Plaintiff's personnel files, master employment records, and background databases; and further ordering Defendant to retroactively correct and restore Plaintiff's operational history to document a separation in 'Good Standing' with a formal designation of 'Eligible for Rehire: Yes'; and

7. Any other compensation and relief this Court deems just, proper, and legally available under federal law.

**PRAYER FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all counts and issues so triable as a matter of right.

Dated: September 17, 2026

Respectfully submitted,
/s/ Esam Noufal

Esam Noufal, Plaintiff Pro Se
6015 Champlain Pass
Lakeland, FL 33805
Esam.noufal1@gmail.com

**VERIFICATION**

I, Esam Noufal, declare under penalty of perjury under the laws of the United States of America that the foregoing factual allegations contained in this Initial Civil Rights Complaint are true, accurate, and correct to the best of my personal knowledge and belief.

Executed on this 17th day of September, 2026.

Esam Noufal, Plaintiff Pro Se